UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CIERA GELLANI,

       Plaintiff,                          Case No. 24-cv-10353

v.

                                                  HON. MARK A. GOLDSMITH

OAKLAND COUNTY et al.,

       Defendants.

_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS (Dkt. 8)**

        Plaintiff Ciera Gellani brings this case against Defendants Oakland County Sheriff Michael J. Bouchard and Oakland County Jail employees Emily Zweng and Megan Kern. Gellani brings six counts: violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. (RLUIPA) (Count I); violation of the Free Exercise Clause of the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count II); violation of the Michigan Constitution, Article 1, § 4 (Count III); declaratory judgment (Count IV); gross negligence (Count V); and negligence (Count VI). See Am. Compl. (Dkt. 5).

        Defendants move for the dismissal of all counts against Bouchard, and the dismissal of all claims except for the § 1983 claim (Count II) against Kern and Zweng.[1] See Mot. (Dkt. 8). For the reasons stated below, the Court grants in part and denies in part Defendants' motion to dismiss.

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions, the briefing includes Gellani's response (Dkt. 10) and Defendants' reply (Dkt. 12).

With respect to Count I, the RLUIPA violation, the Court grants Defendants' motion to dismiss to the extent that Gellani seeks money damages, and denies it to the extent that Gellani seeks injunctive and declaratory relief. The Court grants Defendants' motion to dismiss Count II, the § 1983 claim for violation of the Free Exercise Clause, as to Bouchard. The Court grants Defendants' motion as to Count III, the Michigan Constitution violation, to the extent that Gellani seeks money damages, and denies it to the extent that Gellani seeks injunctive and declaratory relief. The Court grants Defendants' motion as to Count IV, for declaratory judgment, and Count V, for gross negligence. The Court denies Defendants' motion as to Count VI, ordinary negligence.

## I. BACKGROUND

The following facts come from Gellani's amended complaint.

Gellani is a practicing Muslim woman who wears a hijab—an Islamic headscarf that covers the wearer's hair, ears, and neck—as part of her religious practice. Am. Compl. ¶¶ 11, 19. Gellani wears a hijab every day. Id. ¶ 22. According to the Muslim faith, removal of a hijab in public, particularly in the presence of men who do not belong to the wearer's immediate family, is a violation of the wearer's religious practice. Id. ¶ 23.

Gellani was arrested on August 20, 2023. Id. ¶ 56. After the arrest, she was transferred to the Oakland County Jail. Id. ¶ 57.

The Oakland County Sheriff's Office has a written policy that allows a detainee to maintain a religious head covering both for booking photographs and during the detainee's period of detention at the Oakland County Jail. Id. ¶¶ 24, 26. The office also has a policy prohibiting cross-gender searches and pat-downs of arrestees and detainees in non-exigent circumstances. Id. ¶ 25.

2

However, when Gellani arrived at the Oakland County Jail, Zweng and Kern searched her in the presence of two male officers. Id. ¶ 61. Zweng and Kern also removed Gellani's hijab and handed it to a male officer. Id. ¶ 62. Gellani was not asked to consent to the removal of her hijab; rather, she was told its removal was required. Id. ¶ 63. After her hijab was removed, Gellani was walked through several areas of the Oakland County Jail without a head covering, and was observed by male staff, officers, and detainees. Id. ¶ 68. Gellani was made to remain without her hijab for the remainder of her stay at the Oakland County Jail; she was never offered an alternative head covering. Id. ¶¶ 62, 67.

While at the Oakland County Jail, Gellani was also made to take a booking photograph without her hijab or alternative head covering. Id. ¶ 72. That photograph was then uploaded to the Oakland County's Jail's public website. Id. ¶ 73. It was also uploaded to the Michigan State Police Department's Law Enforcement Database, where it allegedly remains. Id. ¶ 74.

Gellani was ultimately released without charges. Id. ¶ 57. She contends that Defendants' actions while she was at the Oakland County Jail violated RLUIPA, the United States Constitution, and the Michigan Constitution. She also brings state-law claims for negligence and gross negligence, as well as a separate claim for declaratory judgment. Defendants have moved to dismiss all six counts of Gellani's complaint as to Bouchard, and five of the six counts—all except Gellani's § 1983 claim for violation of the free exercise clause of the U.S. Constitution—as to Zweng and Kern.

## II. ANALYSIS[2]

### A. Count I: RLUIPA

Defendants argue that Gellani's RLUIPA claim must be dismissed because (i) monetary damages are not permitted under the statute and (ii) any claim for declaratory or injunctive relief under the statute is moot. See Mot. at 5–7. The Court addresses each argument below.

#### 1. Money Damages

Defendants claim that RLUIPA does not permit money damages. See Mot. at 5. In support of this position, they cite to Sossamon v. Texas, 563 U.S. 277, 288 (2011) and Haight v. Thompson, 763 F.3d 554, 567–570 (6th Cir. 2014). In Haight, the Sixth Circuit held that RLUIPA does not permit money damages, explaining that Congress enacted RLUIPA through its spending power, and Congress "must speak with clarity" when it wishes to allow money damages as a remedy for violations of laws enacted under that power. Id. at 568–569. The phrase "appropriate relief" in RLUIPA, the Sixth Circuit concluded, does not satisfy this "clear-statement" rule, so money damages are not permissible. Id.

In so holding, the Sixth Circuit relied on the Supreme Court's opinion in Sossamon. Haight, 763 F.3d at 568. In Sossamon, the court addressed whether the phrase "appropriate relief" in RLUIPA allowed for money damages in actions against state employees when sued in their official capacity. Sossamon, 563 U.S. at 285–293. The Supreme Court held that RLUIPA did not

---

[2] To survive a motion for judgment on the pleadings, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 480 (6th Cir. 2020) (explaining that the Twombly pleading standard applies to 12(c) motions). "Courts must accept as true all well-pleaded factual allegations . . ." Bates, 958 F.3d at 480. A plaintiff plausibly pleads a claim for relief if his or her allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (punctuation modified).

4

allow money damages in such suits because the phrase "appropriate relief" was insufficiently specific. Id. at 285–289. The court found that, "[f]ar from clearly identifying money damages, the word 'appropriate' is inherently context dependent" and thus did not permit claims for money damages. Id. at 286.

Gellani argues that RLUIPA allows for money damages against municipalities and subdivisions of municipal governments and, therefore, allows for money damages in this case. See Resp. at 8–15. First, she argues that Sossamon's holding is limited to the availability of damages in the context of state sovereign immunity, and therefore not applicable here, where she is suing municipal employees who are not subject to sovereign immunity. Resp. at 9–10. But the Sixth Circuit considered, and rejected, this argument in Haight, 763 F.3d at 568. When the Haight defendants argued that Sossamon's holding on RLUIPA applied only to state officials in their official capacity, the court stated: "In making this argument, the inmates understate the coverage of the clear-statement rule. Clarity is demanded whenever Congress legislates through the spending power, whether it relates to waivers of sovereign immunity or not." Id. (emphasis in original). The Haight court further stated that "[e]very circuit to consider the question, whether before Sossamon or after, has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities." Id. at 570. The defendants here are state prison officials—therefore, under Haight, money damages are not recoverable.

Second, Gellani argues that the Supreme Court's more recent decision in Tanzin v. Tanvir, 592 U.S. 43 (2020) supports allowing money damages under RLUIPA in this case. Resp. at 11–12. In Tanzin, the court cited Sossamon as stating that "appropriate relief" is "inherently context dependent" in finding the phrase—as used in the Religious Freedom Restoration Act (RFRA)—to

5

allow for the recovery of money damages. Tanzin, 592 U.S. at 49–50. Gellani argues that the Supreme Court, in issuing Tanzin, modified its ruling in Sossamon. Resp. at 12 n.5.

The Court does not agree. Because Tanzin does not expressly overrule Haight, does not mention RLUIPA, and does not apply the clear-statement rule that underlies the holding in Haight regarding money damages and RLUIPA, the Court finds that Haight is still controlling. See Hague v. Kent Cnty., No. 1:24-cv-9, 2024 WL 4116459, at *6 (concluding that Tanzin "does not overrule or abrogate Haight" because it "did not apply the clear-statement analysis" used by the Sixth Circuit in Haight); see also Mease v. Washington, No. 20-cv-176, 2021 WL 1921071, at *16 (W.D. Mich. May 13, 2021) ("[T]he basis of the Haight court's decision—the need for clarity in statutes promulgated under the Spending and Commerce Clauses—did not apply in Tanzin. As a consequence, Tanzin did not abrogate Haight, which remains controlling authority in this circuit.").

Third, Gellani argues that the Sixth Circuit "has hinted that Haight doesn't govern municipal liability under RLUIPA," citing Tree of Life Christian Schs. v. City of Upper Arlington, 905 F.3d 357 (6th Cir. 2018). See Resp. at 13–14. In that case, a defendant municipality argued that the case was moot because there was already an injunction in place and the plaintiff had abandoned its claim for money damages. Tree of Life Christian Schs., 905 F.3d at 365. The court rejected the defendant's argument as to the claim for money damages, stating that the plaintiff had "not abandoned its money-damages claim; nor did the district court's permanent injunction moot it." Id. According to Gellani, this statement—and the fact that the Court did not refer to its opinion in Haight—made "clear" that "the Sixth Circuit felt that damages were available as a result of a claim under RLUIPA[.]" Resp. at 13–14. The Court does not find this to be "clear." The fact that the court in Tree of Life stated that the plaintiff had not abandoned its money-damages claim is

6

not the same as holding that money damages are available—particularly where, as noted by another court in this circuit, the Sixth Circuit "did not discuss Haight or any other case law discussing the right to damages under RLUIPA." Hague, 2024 WL 4116459, at *6.

Finally, Gellani argues that the Court should follow other circuits that have found money damages are available for claims brought under RLUIPA against municipalities, citing cases from the Third, Fifth, and Ninth Circuits. See Resp. at 14–15. Cases from other circuits are not binding. DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 923 (6th Cir. 2006). Because Haight is clear on the issue, and is controlling precedent, the Court need not consider the out-of-circuit cases cited by Gellani. Gellani may not recover money damages under RLUIPA.

**2. Declaratory/Injunctive Relief**

Defendants argue that, to the extent Gellani seeks declaratory or injunctive relief under RLUIPA, her claim is now moot, as she is no longer detained by the Oakland County Jail. Mot. at 5–7. The Court disagrees.

Defendants cite the Sixth Circuit's opinion in Colvin v. Caruso, 605 F.3d 282, 289 (6th Cir. 2010) to support their argument. Mot. at 5. In that case, the plaintiff sought damages, a declaratory judgment, and an injunction under RLUIPA, alleging that defendants erroneously denied his request for kosher-meal status at a Michigan Department of Corrections facility for sixteen days and continued to provide non-compliant meals even after he was eventually enrolled in the kosher-meal program. The court held plaintiff's requests for declaratory and injunctive relief under RLUIPA to be moot because the requests were directed specifically at the facility at which the plaintiff had been held, and he had since transferred out of the prison. Colvin, 605 F.3d at 289. In so holding, the Colvin court cited Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996)— also cited by Defendants in their motion, see Mot. at 5—in which the Sixth Circuit held a plaintiff's

7

claims for declaratory and injunctive relief under RLUIPA to be moot where he was no longer confined to the institution that had allegedly violated the statute.

Like the plaintiffs in Colvin and Kensu, Gellani is no longer at the Oakland County Jail. However, Gellani alleges that the Oakland County Sheriff's Office has "a policy, pattern and practice of publicly releasing all booking photographs, including those taken when women have been forced to remove their religious head covering to their public facing website that can be accessed by any member of the general public . . . [t]hereby creating a permanent electronic record of the photograph." Am. Compl. ¶ 28. She further alleges that the booking photograph is uploaded to the Michigan State Police Law Enforcement Database, which is accessible by request to other law enforcement agencies and subject to release pursuant to Michigan's Freedom of Information Act. Id. ¶ 29. Pursuant to these policies, Gellani alleges that Defendants maintain the photograph they took of her without her hijab. Id. ¶ 110. That alleged violation does not cease simply because she has left the facility, meaning that her requests for declaratory and injunctive relief can be distinguished from those in Colvin and Kensu.

As part of her request for relief, Gellani asks the Court to (i) "[r]equire[] Defendants to permanently destroy Ms. Gellani's hijabless booking photo or in the alternative enjoin all Defendants from ever again disseminating Ms. Gellani's hijabless booking photo to any member of the public or other governmental agency," (ii) "[o]rder that Oakland County and Oakland County Sheriff's Office permanently remove Ms. Gellani's hijabless booking photo from the public record and their own internal records to ensure that the photo will never again be viewed by men whether members of the public or are [sic] agents and employees of Defendants," and (iii) "[o]rder that Oakland County and Oakland County Sheriff's Office recall, or cause to have removed, Ms. Gellani's hijabless booking photo from the Michigan State Police Law Enforcement

8

Database, or any other database wherein it was uploaded and/or distributed or stored by Defendants." Am. Compl. ¶ 144. This relief does not depend on Gellani being arrested and booked at the Oakland County Jail in the future. Because Gellani continues to have an interest in the outcome of her claims for declaratory and injunctive relief, they are not moot at this time.

### B. Count II: 42 U.S.C. § 1983 Claim

#### 1. Official Capacity Claim

In their motion to dismiss, Defendants argue that the § 1983 claim against Bouchard should be dismissed because Gellani has sued Bouchard only in his official capacity and has failed to adequately state a claim against Oakland County, as required for a § 1983 claim brought against a government employee in his official capacity. Mot. at 7–10.

As Defendants explain, "[a]n official capacity claim is simply an alternative means of pleading a cause of action against a municipality." Id. at 7 (citing Morgan v. Fairfield Cnty., 903 F.3d 553, 560 (6th Cir. 2018)). In Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), the Supreme Court recognized that municipal governments may be liable under § 1983 for constitutional violations in certain circumstances. Defendants argue that Gellani's amended complaint includes no factual allegations supporting her Monell claim. See Mot. at 9–10. The Court agrees.

A plaintiff may demonstrate that a municipality's official policy or custom caused his or her injury by demonstrating the existence of one or more of the following: (i) an illegal official policy or legislative enactment; (ii) an official with final decision-making authority who ratified illegal actions; (iii) a policy of inadequate training or supervision; or (iv) a custom of tolerance or acquiescence of federal rights violations. Lipman v. Budish, 974 F.3d 726, 747 (6th Cir. 2020).

Gellani acknowledges that Oakland County's—and therefore Bouchard's—official policy

9

allows detainees to maintain religious head coverings both for booking photographs and during the detainee's period of detention at Oakland County Jail, and prohibits cross-gender searches and pat-downs of arrestees and detainees in non-exigent circumstances. Am. Compl. ¶¶ 24–26. But despite the written policy stating otherwise, Gellani alleges that Defendants nonetheless have a "pattern and practice of non-compliance with their own written policies" which includes the (i) removal of all religious headwear for booking photographs; (ii) removal of all religious headwear in front of individuals of the opposite biological sex; (iii) prohibition on wearing religious head coverings during the term of the detention within the Oakland County Jail; and (iv) maintaining these booking photographs where they may be accessed by the public. See id. ¶¶ 27–34. Gellani also alleges that Bouchard is "substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo policies, patterns and practices, id. ¶ 100, and that he "fail[ed] to train . . . supervise, review and/or discipline officers" under a litany of circumstances, including where officers were known to "harass, intimidate or abuse citizens," or to racially or religiously profile citizens, id. ¶ 141.

To the extent that Gellani relies on the "custom" theory of liability, her claim fails. A custom, for purposes of Monell liability, must "be so permanent and well settled as to constitute a custom or usage with the force of law." Monell, 436 U.S. at 691 (punctuation modified). The Sixth Circuit has articulated four requirements for a municipality liability claim premised on allegations that a policy of tolerating federal rights violations is unwritten but nevertheless entrenched: (i) the existence of a clear and persistent pattern of illegal activity; (ii) notice or constructive notice on the part of the municipality; (iii) the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (iv) that the municipality's custom was the moving

10

force or direct causal link in the constitutional deprivation. Doe v. Clairborne Cnty., 103 F.3d 495, 508 (6th Cir. 1996). Gellani's amended complaint fails to allege facts supporting any of the four required components.

Regarding the first requirement, Gellani fails to allege the existence of a "clear and persistent pattern" of illegal activity because the only specific instance she alleges where the written policy was not followed is her own booking experience at the Oakland County Jail. While she alleges generally that her experience is consistent with the Oakland County Jail staff's "pattern and practice of non-compliance with their own written policies," Am. Compl. ¶ 27, she alleges no other specific instances of such non-compliance. The Court finds that "[i]t is not plausible to infer" a custom of constitutional behaviors from Gellani's allegations about her mistreatment on one occasion. Jones v. Washington, No. 22-cv-10188, 2023 WL 3297115, at *5 (E.D. Mich. Mar. 23, 2023) report and recommendation adopted, 2023 WL 3297115 (E.D. Mich. Apr. 24, 2023) (finding a plaintiff's allegations of his own mistreatment insufficient to allege a custom of such mistreatment).

As for the second and third requirements, Gellani has not alleged that the Oakland County Jail, the Sherriff's Office, or Bouchard had any actual or constructive knowledge of any custom of noncompliance with the policy—she does not even allege their knowledge with respect to her specific case. She has, therefore, alleged no "tacit approval" either.

Finally, she has alleged nothing to suggest that such a custom of noncompliance was the reason for the alleged unconstitutional behavior she was subject to—as opposed to, for example, independent decision-making on the part of Defendants Zweng and Kern.

Gellani's conclusory allegations are insufficient to allege a Monell claim based on a custom of tolerance or acquiescence of federal rights violations.

Nor has Gellani adequately alleged a Monell claim for failure to train or supervise. A proper failure-to-train claim would have included allegations that (i) the Oakland County Jail's training program was inadequate for the tasks its employees had to perform, (ii) the inadequacy was the result of deliberate indifference, and (iii) the inadequacy was closely related to or actually caused the injury. Jackson v. City of Cleveland, 925 F.3d 793, 834 (6th Cir. 2019).

Gellani fails on the first and second prongs. First, the amended complaint includes no specific allegations regarding the training Bouchard provided for the jail employees. The Court, therefore, has no way to know whether the shortcomings alleged on the part of Kern and Zweng "may have resulted from factors other than a faulty training program." City of Canton v. Harris, 489 U.S. 378, 390–391 (1989). Second, Gellani has not alleged deliberate indifference on the part of Bouchard or Oakland County Jail more generally. While "[a] pattern of similar constitutional violations by untrained employees" may demonstrate deliberate indifference, see Connick v. Thompson, 563 U.S. 51, 62 (2011), Gellani has failed to allege this, as well.

To the extent that Gellani also alleges a failure-to-supervise claim, she has failed to adequately do so. To successfully allege a claim under this theory, she must show that (i) the defendant was aware that its employees committed or were likely to commit constitutional violations, (ii) the defendant chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights, and (iii) the lack of corrective action actually caused the constitutional violation. Mize v. Tedford, 375 F. App'x 497, 500 (6th Cir. 2010).

Gellani alleges these components as conclusions rather than alleging facts that could plausibly sustain such a claim. As explained above, the amended complaint contains no allegations that Bouchard or Oakland County Jail more generally had any knowledge of a pattern of non-compliance with written policies. Specifically with regard to Bouchard's training, Gellani alleges

"[f]ail[ure] to supervise, review and/or discipline officers whom Defendants' [sic] knew or should have known were violating or prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct." Am. Compl. ¶ 141. But Gellani alleges no facts to support this conclusory allegation.

The Court finds that Gellani's conclusory allegations fail to support a § 1983 claim against Bouchard in his official capacity.

### 2. Individual Capacity Claim

In response to Defendants' motion to dismiss the § 1983 claim against Bouchard due to Gellani's failure to allege an official capacity claim, Gellani argues that "each and every count in Plaintiff's complaint was brought against all three Defendants in both their individual and official capacity." Resp. at ii. It is true that, under each cause of action in the amended complaint, Gellani states that the cause of action is brought "As To Defendant and Individual Defendants in Their Official and Individual Capacity." However, the Court finds that Gellani has not adequately alleged a § 1983 claim against Bouchard in his individual capacity, as she has failed to allege any personal involvement by Bouchard in the alleged violations. See Patton v. Przybyiski, 822 F.2d 697, 701 (1987) (dismissing an individual capacity claim against a defendant sheriff where the plaintiff alleged no personal involvement, explaining that "courts insist that plaintiffs who want to bring a head of department into a federal civil rights case plead his involvement with greater specificity than [plaintiff] has done"); see also Sears v. Washington, 655 F.Supp.3d 624, 627–628 (E.D. Mich. 2023) (collecting cases).

Gellani argues that she has pleaded personal involvement on the part of Bouchard, stating that Bouchard "was the one who created and approved this policy, and has allowed jail staff to fail to enforce this policy as it pertains to Plaintiff." Resp. at 23. Bouchard's "failure to require strict

enforcement of Oakland County Jail's religious head wear policy unreasonably requires the explicit and unconditional removal of headgear regardless of an individual's sincerely held religious beliefs." Id.

This is insufficient. There are no facts to indicate that Bouchard knew of Gellani's detention and took some action to bring about a failure to enforce the written policy of not requiring the removal of headgear. Nor are there any allegations of Bouchard's personal involvement with any other incident that resulted in removal of headgear contrary to the written policy. Individual capacity claims against Bouchard must be dismissed.

Because the Court has found that the official capacity claims must be dismissed as to Bouchard, and because the complaint is devoid of allegations that Bouchard personally engaged in violating the Constitution, the § 1983 claim as to Bouchard must be dismissed entirely.

### C. Count III: Violation of the Michigan Constitution

Defendants argue that Gellani's claim for a violation of the Michigan Constitution must be dismissed because (i) she cannot claim money damages and (ii) any claim for injunctive or declaratory relief is moot. Mot. at 11–12. In response, Gellani does not engage with these arguments, stating only that the Michigan Constitution "has long recognized a constitutional claim for violation of sincerely held religious beliefs" and that she has met the requirements for making such a claim, as she alleged that she has been "enforced, restrained, molested, or burdened . . . [or] otherwise suffer[ed], on account of [her] religious opinions or beliefs." Resp. at 19–20.

The Court agrees that money damages are not an available remedy for violations of the Michigan Constitution when claimed against a municipality or an individual government employee. See Jones v. Powell, 612 N.W.2d 423, 427 (Mich. 2000) (explaining that Michigan courts have only recognized a narrow remedy against states and state officials, based on the

14

unavailability of any other remedy, and explaining that municipalities and individual defendants may be sued under 42 U.S.C. § 1983 or common-law tort remedies). Gellani provides no argument in opposition. Gellani may not recover money damages from Defendants under her claim for a violation of the Michigan Constitution.

However, as explained above, Gellani's claim for injunctive and declaratory relief is not moot. Therefore, the Court will not dismiss Gellani's count based on an alleged violation of the Michigan Constitution to the extent she seeks injunctive or declaratory relief.

### D. Count IV: Declaratory Judgment

Defendants argue that Gellani's claim for declaratory judgment, brought under the Declaratory Judgment Act, should be dismissed because (i) declaratory judgment is not an independent cause of action, and (ii) her request for a declaratory judgment is moot. Mot. at 12–13. The Court agrees that the Declaratory Judgment Act does not create an independent cause of action. Davis v. U.S., 499 F.3d 590, 594 (6th Cir. 2007). Gellani does not dispute this.

The Court dismisses Count IV. It construes Gellani's claim for declaratory judgment as a request for declaratory relief, which it will consider in conjunction with her surviving claims.

### E. Counts V and VI: Gross Negligence and Negligence

Finally, Defendants argue that Gellani's state-law claims for negligence and gross negligence should be dismissed. First, they argue that there is no independent cause of action for gross negligence under Michigan law. Mot. at 13. Second, they argue that Gellani's ordinary negligence claim should be dismissed because (i) there is no independent cause of action for negligence under Michigan law, and (ii) Defendants have governmental immunity from such a claim under Michigan's Governmental Tort Liability Act, Mich. Comp. L. 691.1401 et seq. (GTLA). Mot. at 13–15.

Defendants are correct that Michigan law does not recognize "gross negligence" as a cause of action. See Stein v. Corizon Health, Inc., No. 17-cv-13241, 2018 WL 1425954, at *1 (E.D. Mich. Mar. 22, 2018). Rather, gross negligence exists as a mechanism by which Plaintiffs can breach state qualified immunity. Id. ("Rather, [the GTLA] states that a governmental employee is qualifiedly immune from civil liability unless a plaintiff can sufficiently show that the employee was grossly negligent.") (citing 691.1407)). Accordingly, Gellani's standalone claim for gross negligence is dismissed.

Regarding the ordinary negligence claim, Defendants argue both that negligence is not an independent cause of action, Mot. at 13, and that that they have governmental immunity from such a claim. Mot. at 14–15. The Court rejects Defendants' first argument. Defendants do not cite to any authority nor make any other attempt to explain their statement that there is no cause of action for negligence; so this argument fails. McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (punctuation modified)).

In response to the immunity argument, Gellani argues that Defendants are not entitled to "absolute immunity"—immunity for judges, legislators, and "the elective or highest appointive executive official of all levels of government," when acting under the scope of their authority— under Mich. Comp. L. 691.1407(5) for damage claims.[3] Resp. at 21–22. But Defendants' motion invokes only qualified immunity, under Mich. Comp. L. 691.1407(1) and (2). These provisions provide immunity from tort liability to government employees for injury caused by the employee

---

[3] Gellani cites to Mich. Comp. L. 691.1507(5) in her response brief. Resp. at 21. Because she describes it as providing "absolute immunity" to "the highest official of [sic] government agency," the Court assumes Gellani intended to cite Mich. Comp. L. 691.1407(5) instead.

16

"while in the course of employment or service," and "without regard to the discretionary or ministerial nature of the conduct in question," provided the following conditions are met: (i) the employee "is acting or reasonably believes he or she is acting within the scope of his or her authority," (ii) "[t]he governmental agency is engaged in the exercise or discharge of a government function," and (iii) the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. L. 691.1407(1) and (2).

Here, Defendants are government employees, and the injuries allegedly caused to Gellani occurred while in the course of employment or service. "The operation of a jail is clearly a governmental function." Jackson v. Saginaw Cty., 580 N.W.2d 870, 874 (Mich. 1998). Gellani fails to allege that Defendants were not acting, or did not reasonably believe they were acting, within the scope of their authority during the incidents in question. Further, Gellani has alleged that Defendants were grossly negligent in their treatment of her. Whether or not that proves to be the case as the litigation proceeds, the allegations are sufficient for the claim to survive Defendants' motion to dismiss.

Moreover, as Gellani points out, Michigan courts have held that governmental immunity does not apply to cases seeking injunctive relief. Resp. at 20–21. See Eddy v. Kawkawlin Twp., No. 362983, 2024 WL 1228730, at *3 (Mich. Ct. App. Mar. 21, 2024) (citing Lash v. Traverse City, 735 N.W.2d 628, 637–639 (Mich. 2007) for the proposition that "[t]he GTLA does not prohibit claims for declaratory and injunctive relief."). Based on this Michigan authority, the Court finds that Gellani's claims for injunctive and declaratory relief associated with her negligence claim are not barred by immunity.

The Court accordingly dismisses Gellani's claim for gross negligence, but does not dismiss her claim for ordinary negligence.

### III. CONCLUSION

For the reasons explained above, the Court grants in part and denies in part Defendants' motion to dismiss. With respect to Count I, the RLUIPA violation, the Court grants Defendants' motion to dismiss to the extent that Gellani seeks money damages, and denies it to the extent that Gellani seeks injunctive and declaratory relief. The Court also grants Defendants' motion to dismiss Count II, the § 1983 claim for violation of the Free Exercise Clause, as to Bouchard. The Court grants Defendants' motion to dismiss Count III, the Michigan State Constitution violation, to the extent that Gellani seeks money damages, and denies it to the extent that Gellani seeks injunctive and declaratory relief. The Court also dismisses Count IV, for declaratory judgment, and Count V, for gross negligence. The Court denies the motion to dismiss as to Count VI, for ordinary negligence.

Surviving in this case are: (i) Count I, with respect to injunctive and declaratory relief only, as to all Defendants; (ii) Count II, only as to Gellani's claims against Kern and Zweng; (iii) Count III, with respect to injunctive and declaratory relief only, as to all Defendants; and (iv) Count VI as to all Defendants.

SO ORDERED.

Dated: January 27, 2025  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge